705 P.2d 951

**Jerry Karen ROSZKO, Petitioner/Appellee,**

v.

**Jerome J. ROSZKO, Respondent/Appellant.**

**No. 2 CA–CIV 5204.**

Court of Appeals of Arizona, Division 2, Department A.

June 3, 1985.

Review Denied Aug. 27, 1985.

Thomas P. Sylvester, P.C. by Thomas P. Sylvester and Jeffrey G. Paupore, Tucson, for petitioner/appellee.

Ethan Steele and Harry S. Bachstein, Jr., Tucson, for respondent/appellant.

---

## OPINION

BIRDSALL, Presiding Judge.

Appellee Jerry and Appellant Jerome Roszko obtained a dissolution of their marriage in April 1974. Merged and incorporated into the decree was a property settlement agreement entered the same month. The agreement in part provided for the support of the couple's three children, born in June 1964, November 1966, and October 1969. The agreement provided that appellant pay appellee, the custodial parent, $150 per child per month until the individual children reached 18 years of age. Additional language covered support should the child decide to attend college, but that provision is not of concern here. A separate clause, No. 3, states:

> "That in addition to the child support as set forth in Paragraph 2 above, Husband agrees to pay to the Wife 40% of the net monthly increase in the salary of Husband when said Husband receives periodic increases in salary by virtue of his employment."

The parties agree that nothing in the property settlement agreement or the divorce decree was intended to be spousal maintenance for the wife but that all amounts payable were to be for the support of the children. They further agree, and the trial court found, that as to paragraph 3 above, any salary increases were intended to be based upon the appellant's hourly wage, and not increased by overtime or "hot" time (hazardous) payment earned by him in his employment.

Both parties agree that for about a year after the dissolution, appellant kept up the required $450 per month payments, but that thereafter, he encountered "financial difficulties" which prevented him from paying the full amount, and they frequently discussed the fact that he was overdue and not keeping up the payments. No calculation was ever made of his salary increases, nor was this a matter of discussion between them. In 1983 appellee began litigation to obtain the amount due her for the support of the children, and began garnishment of appellant's earnings. A hearing was held in late 1983, and the trial court ruled that appellant was in arrears, that most of the arrearage was not barred by the statute of limitations, that appellant was no longer responsible for payment of child support for the child who had moved back into his home with him, that the 40 percent provision was not to be prorated among the children, but the total amount was due at all times, that interest from the due date of each required payment was due, and that appellee was entitled to attorney fees and all taxable costs. The court also calculated all amounts due plus interest under both pertinent paragraphs of the settlement agreement. An order reflecting these findings and calculations was prepared by appellee, and signed and filed by the court on May 1, 1984. The total award under the order was $49,680.32. This appeal follows.

Appellant argues four general propositions: 1) the award is excessive and ignores the needs of appellant's second family; 2) the appellee is barred by laches from parts of the award; 3) the 40 percent provision is an invalid escalator clause; and 4) the court erred in calculating the award due under the clause.

We affirm.

### EXCESSIVENESS OF AWARD

■ Appellant has made an extensive argument that the amount of the award and the wage assignment necessary to accomplish its payment have a devastating effect on his ability to provide for his second wife,

their two children, and the son from the first marriage who returned to live with him. He calculates the percentage of his take-home pay remaining to support each member of his present household as evidence that too much must be deducted to pay the award and projects these figures for up to eight years into the future necessary to meet the obligation. This argument overlooks the fact that the son of his first marriage living with him reached 18 in November 1984, and that the youngest child will be 18 in three years. Quite simply, the answer to this question is that appellant was aware of his financial obligations to his first family before he went about creating a second family. The financial difficulties he pleaded for several years to permit him to *postpone* those obligations were a direct result of his remarriage, birth of his two children, and acquisition of a home, and he has cited absolutely no authority which would permit us to allow him to obtain relief from his obligations stemming from 1974 for such reasons.

### LACHES

■ Appellant argues that because appellee did not seek to obtain the increase in support incorporated in the 40 percent escalator clause until the litigation began, she is now barred by laches from asserting it. Appellee argues that failure to raise the laches defense until now bars it. We disagree. The appellant raised this defense several times, most recently in his motion to quash the order to show cause, filed November 17, 1983, and in his post-trial memorandum, filed January 5, 1984. The defense of laches is properly before us.

However, we cannot find that the doctrine bars an award under the 40 percent clause. It is clear throughout the proceedings, in both parties' testimony, memoranda, and affidavits, that appellee sought without success for nearly ten years to receive the base sum of child support payments which were due under Paragraph 2 of the settlement. At no time after the first several months following the dissolution was appellant current in his payments.

Appellee constantly informed him of these arrearages. We do not require that she do a futile thing. It was manifestly obvious that if appellant was unable, due to financial difficulties, to pay the base amount, he would be unable to pay the additional amount of Paragraph 3. Her demand is not barred by laches.

### THE VALIDITY OF THE 40 PERCENT ESCALATOR CLAUSE

Appellant cites our decision in *Brevick v. Brevick*, 129 Ariz. 51, 628 P.2d 599 (App. 1981) as mandating the invalidity of the 40 percent escalator clause in the property settlement agreement. *Brevick* was in a different legal posture than presented here, and is distinguishable. In *Brevick*, the former wife petitioned for a modification of the dissolution decree as to the child support. For the first two years following the modification, the award was to be a fixed sum of money. For the third and following years, the total sum was to be a percentage of the appellant's net income. Appeal was from the modification and we found that basing the entire amount on a percentage of total salary was not "an amount" as required by A.R.S. § 25–320(A) (Supp.1984). We also held that the *Brevick* award was too uncertain and indefinite, and would not, for example, provide for any support to the children in a situation where appellant had no income, even though he might have other means to pay child support.

Appellant's major problem in relying on that case is that it dealt with a modification judgment (an appealable order), and not with an original decree as to which the time for appeal has passed or with a property settlement agreement freely entered into by the parties and incorporated into the decree of dissolution. Appellant seeks to modify that earlier judgment by asserting its nullity now. He did not appeal. He at no time sought modification of the terms of the dissolution decree.

We find this argument similar to that propounded in *Tippit v. Lahr*, 132 Ariz. 406, 646 P.2d 291 (App.1982). There appel-

lee sought to modify his divorce decree, and thus avoid sharing a tort settlement with his minor children, by reopening, ten years later, his divorce decree through the device of a Rule 60(c) motion for relief from operation of judgment. The court observed,

"Appellee's principal argument, as we understand it, is that paragraph 6 was never a part of the divorce decree. He reasons that the agreement embodied in that provision was a nullity, and therefore legally non-existent when the agreement was presented to the court, and that the incorporation of the agreement therefore did not incorporate paragraph 6. This interesting legal fiction is unpersuasive." 132 Ariz. at 409, 646 P.2d at 294.

■ The same criticism applies here. Appellant seeks to modify his ten-year-old divorce decree by appealing the award of arrearages under its terms. The proper procedure would have been either to appeal from the decree or to have sought modification by a separate proceeding. The decree incorporating the questioned provision is res judicata.

We do not agree that the clause has been unenforceable from its beginning. The criticism this court made of a percentage escalator clause in *Brevick*, supra, is largely inapplicable to the present situation. In *Brevick*, the percentage of salary was the *only* amount of child support to be paid, and thus, according to the court, could have amounted to nothing in years when the payor had no income yet had the ability to pay, and could likewise have greatly increased his liability in some years in excess of the children's reasonable support needs. In the present case, the percentage escalation is not the sole basis for the children's support, but is only a factor in addition to a fixed sum. The percentage is likewise not based upon entire earnings, but only upon the *increase* in base wages, and thus is a more accurate reflection of the inflationary trend of the cost of living which we recognized as a legitimate concern in *Brevick*. There is also a public policy reason for

upholding this award while rejecting an escalator clause such as in *Brevick*. The *Brevick* clause might have induced a parent to *cease* working inasmuch as it taxed each and every dollar earned by him. The instant provision taxes only part of the increases in appellant's pay. This escalator clause encourages, rather than discourages, full employment of the wage earner.

The percentage escalator clause employed in this case avoids those evils cited in *Brevick*, represents an agreement freely entered into by both parties at the time of their dissolution, provides a method for dealing with the hazards of inflationary cost-of-living increases without the requirement of returning to court at frequent intervals for modifications, and so does not unnecessarily exacerbate relations between parents trying to provide for their children. See Annot., 19 A.L.R. 4th 830, 1984.

## COMPUTATION OF THE ESCALATOR CLAUSE

■ Appellant argues that the clause was erroneously computed in two respects. He first asserts that the 40 percent should have been apportioned among the children. Again, that is not the agreement the parties reached at the time they entered into the property settlement agreement. No evidence suggests this was their intent. To require apportionment among the three children would be to read something into the clause that has never been there. It would have been an abuse of the trial court's discretion to rewrite the agreement when not even a modification was sought by either party.

■ Appellant then seeks to show that the calculation was made on a cumulative, rather than periodic, basis. We decline to follow his reasoning or his computation. His argument would seem to be that only once in each year that an increase in his base pay was made, a calculation of that 40 percent would be made, and his child support payment increased just that once, then his payments would revert to the $150 per child for the rest of the year, until another increase was given. Nothing indicates this

strained interpretation represents the intent of the parties. As we have discussed, their probable intent was to protect the support award from inflation. A *one-time* increase in support because of a salary increase would not do this.

The cumulative method which appellant argues was used to arrive at his award would have involved granting a 40 percent increase in a year when appellant's pay increased $100, for example, and then, while *continuing* the 40 percent increase, requiring an *additional* 40 percent of the total of a subsequent $100 raise, or $40 of the first $100 *plus* $80 of the total $200 after another $100 raise. This is not what was done. The trial judge properly calculated, on an annual basis, 40 percent of every payment over what appellant was earning at the time of the agreement in 1974. There was no error. The judgment of the trial court is affirmed.

HOWARD and FERNANDEZ, JJ., concur.