772 P.2d 16

**Timothy W. JEPSON and Deborah J. Jepson, husband and wife, Plaintiffs–Appellants,**

v.

**Cynthia Joanne NEW, a single woman; James New and Jane Doe New, husband and wife; Irene Hasal, a single woman; and Stephen Brown and Harriet Brown, husband and wife, Defendants–Appellees.**

No. 1 CA–CIV 9534.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 10, 1989.

Petitions and Cross Petition for Review Granted May 2, 1989.*

* Corcoran, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

194

Warner, Angle, Roper & Hallam by Roger K. Gilbert, Daniel P. Schaack, Mariscal, Weeks, McIntyre & Friedlander, P.A. by Gerald Gaffaney, Phoenix, Vogel & Wulfers by William C. Wulfers, Jr., Scottsdale, for plaintiffs-appellants.

Crampton, Woods, Broening & Oberg by Brian Holohan, Phoenix, for defendants-appellees New.

Winston & Strawn by Daniel D. Maynard, Clifford J. Roth, Kevin P. Gallagher, Phoenix, for defendants-appellees Hasal and Brown.

## OPINION

### FIDEL, Judge

The plaintiffs' lawsuit was dismissed for lack of timely prosecution. Though the dismissal formally lacked prejudice, it was prejudicial in fact because, by the time of dismissal, the statute of limitations for the plaintiffs' cause of action had run. The plaintiffs sought reinstatement under Rule 60(c)(6), 16 A.R.S. Rules of Civil Procedure. Alternatively, they sought suspension of the statute of limitations and an opportunity to refile a new suit against the defendants pursuant to A.R.S. § 12–504(A), a "savings statute" enacted by the legislature, effective July 24, 1986. The trial court denied relief on either ground. The plaintiffs' appeal occasions our comparison of Rule 60(c)(6) and the savings statute and our conclusion that, although the trial court acted within its discretion in denying relief under the former, it abused its discretion in denying relief under the latter.

We hold that the trial court erred in approaching the question of refiling under § 12–504 as identical to the question of reinstatement under Rule 60(c)(6). We explore the differing standards for relief under the rule and statute; we examine the trial court's discretion under § 12–504 to grant or withhold an opportunity for refiling in cases of dismissal for lack of prosecution; and we find that the principal focus of such discretion lies in comparison of harm to defendants if relief should be granted against harm to plaintiffs if relief should be denied. We conclude that the trial court erred in denying the plaintiffs a refiling opportunity in the present case in the absence of any showing by defendants that they would be prejudiced by delay of the first lawsuit and refiling of a second.

### I. *Procedural History*

The plaintiffs' personal injury claims arise from a collision on December 18, 1983, between an automobile driven by defendant Irene Hasal and an automobile driven by defendant Cynthia New. The plaintiffs were passengers in the Hasal vehicle. Claiming personal injuries, they filed suit on October 1, 1985, within the two year statute of limitations. A.R.S. § 12–542. Both drivers were named as defendants; additional defendants were James and Jane Doe New, owners of the car driven by Cynthia New, and Stephen and Harriet Brown, owners of the car driven by Irene Hasal.

The plaintiffs filed their lawsuit in the Superior Court of Maricopa County, which oversees the pace of litigation from the date of filing pursuant to Rule V, Uniform Rules of Practice, 17B A.R.S. Thereunder, if a motion to set and certificate of readiness has not been filed within nine months of the commencement of an action, the case must be placed on the inactive calendar. Dismissal without prejudice for lack of prosecution follows two months from placement on the inactive calendar unless, in the intervening period, a motion to set is filed, judgment is entered, or the trial court has granted an extension upon showing of good cause.[1]

On July 1, 1986, the superior court mailed plaintiffs' counsel a standard notice that the case would be placed on the inactive calendar on August 1, 1986, for dismissal on October 1, 1986, unless Rule V compliance were earlier achieved. As of July

---

1. Uniform Rule V(e) provides in pertinent part:
 (e) Inactive Calendar. The clerk of the court or court administrator shall place on the Inactive Calendar every case in which a Motion to Set and Certificate of Readiness has not been filed within nine months after the commencement thereof.... All cases remaining on the Inactive Calendar for two months shall be dismissed without prejudice for lack of prosecution, and the court shall make an appropriate order as to any bond or other security filed therein, unless prior to the expiration of such two months period:
 (1) A proper Motion to Set and Certificate of Readiness is filed; or
 (2) The court, on motion for good cause shown, orders the case to be continued on the Inactive Calendar for a specified period of time without dismissal.

1, the date of issuance of this notice, the plaintiff had yet to accomplish service on any defendant, though nine months had passed from the date of commencement.

Plaintiffs' counsel responded to the court's notice with an *ex parte* motion on July 16, 1986, seeking an extension of the inactive calendar dismissal date from October 1 to December 1. The motion was granted, leaving the plaintiffs approximately four and one half months further to conclude the case by settlement, bring it to a state of certifiable trial readiness, or demonstrate good cause for a further extension to the court.

Plaintiffs proceeded to serve summons and complaint on the defendants New on July 18, the defendants Brown on August 16, and the defendant Hasal on September 2. Uniform interrogatories and requests for production to each defendant accompanied the summons and complaint. On August 13, 1986, the plaintiffs also issued non-uniform interrogatories to the News. On October 21, they responded to a request for production by the News. There is no record of other activity by plaintiffs in the processing of their case before December 1, 1986, the extended dismissal date they had sought and achieved from the court.

The plaintiff did not file a motion to set or certificate of readiness on or before December 1. They were in no position to do so, not yet having taken the preliminary step of filing a witness and exhibit list and commencing the running of the defendants' twenty day period under Uniform Rule V(a) to file responding witness and exhibit lists.[2] Nor did plaintiffs seek an extension on the

inactive calendar from the court. Plaintiffs' counsel acknowledged in later proceedings that they had neglected to calendar the December 1 dismissal date. On December 17, 1986, Judge Hilliard signed and entered a standard judgment of dismissal for lack of prosecution.

Although plaintiffs' counsel did little to advance the case before December 1, the record reflects some additional activity on behalf of plaintiffs in December at and about the time the case was facing and undergoing dismissal. On December 8 both plaintiffs appeared for deposition noticed by defendants New; but after the deposition of plaintiff Deborah Jepson had started, counsel agreed to suspend both plaintiffs' depositions pending further medical discovery. On the same date plaintiffs supplemented their response to the News' request to produce. On December 11, plaintiffs filed their list of witnesses and exhibits, a belated preliminary step toward filing a motion to set and certificate of readiness. On December 23, apparently before the receipt of the court's judgment of dismissal, plaintiffs noticed the depositions of the defendants New and Hasel for January 15, 1987.

On December 30, 1986, having received the judgment of dismissal, plaintiffs moved to set it aside pursuant to Rule 60(c)(6). On January 6, they amended their motion to seek alternative relief under A.R.S. § 12–504. Plaintiffs' motion was denied by Judge Riddel, to whom the case had been transferred upon Judge Hilliard's self-disqualification, and the denial was embodied in a formal order entered on February 24,

---

**2.** Maricopa County, pursuant to Rule 3.4, 17B A.R.S. Superior Court Local Rules, has adopted the witness and exhibit listing procedures set forth in Uniform Rule V(a). Uniform Rule V(a) provides in pertinent part:

(1) A party intending to file a Motion to Set and Certificate of Readiness shall first file a list of witnesses and exhibits intended to be used at trial other than those to be used solely for impeachment;

(2) Within 20 days after service of such list, all other parties shall also file a list of their witnesses and exhibits intended to be used at trial other than those to be used solely for impeachment;

(3) Within the ten days after the expiration of the time provided for filing the other parties' lists, but not earlier, any party may file a Motion to Set and Certificate of Readiness.

If a Motion to Set and Certificate of Readiness is not filed within the ten-day period, or for any reason is stricken, the lists of witnesses and exhibits shall not be final, and no Motion to Set and Certificate of Readiness shall be filed thereafter without compliance again with the procedure for listing witnesses and exhibits set forth in this Rule.

No exhibits or witnesses shall be used at trial other than those listed in accordance with this Rule, except for good cause shown or upon written agreement of the parties.

1987. From that order and from the order of dismissal signed by Judge Hilliard, plaintiffs appeal.[3]

## II. *Reinstatement Under Rule 60(c)(6)*

■ Rule 60(c) provides a trial court with authority "[o]n motion and upon such terms as are just" to relieve a party from a final judgment. The rule lists five specific bases for relief, followed by clause (6), a catchall provision permitting the court to act for "any other reason justifying relief from the operation of the judgment." [4] To obtain relief under Rule 60(c)(6), a party must show "extraordinary circumstances of hardship or injustice." *Davis v. Davis*, 143 Ariz. 54, 57, 691 P.2d 1082, 1085 (1985).

In *Bickerstaff v. Denny's Restaurant, Inc.*, 141 Ariz. 629, 688 P.2d 637 (1984), like this case, one of dismissal for lack of prosecution, our supreme court acknowledged the passing of the statutory limitations period "as one of many factors in a determination of 'extraordinary circumstances,'" but the court held that passage of the limitations period alone, absent other compelling factors, does not necessitate relief. 141 Ariz. at 633, 688 P.2d at 641.

In *Gorman v. City of Phoenix*, 152 Ariz. 179, 183, 731 P.2d 74, 78 (1987), the supreme court refined this holding, stating:

> When, as here, the expiration of the statute of limitations turns a dismissal without prejudice into a dismissal with prejudice, the trial court must take an especially hard look at the actual circumstances of the case before it.

*Gorman*, like *Bickerstaff*, involved dismissal for lack of compliance with the time limits of Uniform Rule V. However, in *Gorman*, though the plaintiffs overlooked a deadline for Rule V compliance, the record showed them to have otherwise vigorously prosecuted their claim. Commenting that "diligence is the hallmark," the supreme court concluded that the plaintiffs' conduct had satisfied that standard. *Id.* at 183, 731 P.2d at 78. The court stated:

> [T]rial courts should consider carefully a Rule 60 motion to set aside a Uniform Rule V(e) dismissal when, as here, there is evidence that (1) the parties were vigorously pursuing the case, (2) the parties were taking reasonable steps to inform the court of the case's status, and (3) the moving party will be substantially prejudiced by, for example, the running of the limitations period if the dismissal is not set aside. If all these factors are present, even doubtful cases should be resolved in favor of the party moving to set aside the dismissal. *Walker [v. Kendig]*, 107 Ariz. [510,] 513, 489 P.2d [849,] 852 [ (1971) ].

152 Ariz. at 183–84, 731 P.2d at 78–79.

The application of *Gorman* is not difficult in an actively prosecuted case. Where, as in *Gorman* itself, the plaintiffs have diligently waged their claim but for an oversight in Rule V compliance, the expiration of the statute of limitations warrants reinstatement under Rule 60(c)(6). Nor is application difficult in the opposite circumstance where plaintiffs' counsel have treated the filing of a superior court complaint as a type of parking permit, making no effort to advance their client's claim. Such cases are appropriately subject to the *Bickerstaff* conclusion that the expiration of the statute of limitations alone will not serve to redeem from dismissal an unprosecuted case.

---

**3.** Plaintiffs' present counsel on appeal were not their counsel in the trial court.

**4.** Rule 60(c) lists the following bases for relief:
On motion and upon such terms as are just the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(d); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

These poles, however, bound a large intermediate area of cases neither vigorously prosecuted nor practically abandoned. The supreme court spoke of this grey area in *Gorman* when it said,

We are not saying that relief under Rule 60(c)(6) is always available if the parties have not abandoned the case. Lawyers who fail to comply with Uniform Rule V(e) do so at their peril. *Bickerstaff, supra.*

152 Ariz. at 183, 731 P.2d at 78.

Cases that fall within this area must be examined on a case-by-case basis by the trial court. The court must be strongly guided in this examination by the precept, "[J]ustice requires that when possible a matter be determined upon its merits." *Gorman*, 152 Ariz. at 183, 731 P.2d at 78, quoting *Walker*, 107 Ariz. at 512, 489 P.2d at 851. Yet it must also be guided by concern that justice systemically delayed is systemically denied. Uniform Rule V does not give the trial court power for the superficial housekeeping purpose of maintaining an admirable filing/disposition ratio. Rather, it gives the trial court responsibility for the more worthy purpose of maintaining justice at a reasonable pace.

A common criticism of courts, the legal profession, and our system of justice is that our adjudicative process takes too long. Claims grow stale, witnesses are lost, and memories fade with delay. Once a litigant enters the judicial forum by filing a complaint, the court owes a duty not solely to the parties but to witnesses, jurors, and the public to press the case toward a reasonably expeditious end.

The present case falls within the grey area in which the trial court's informed discretion counts for much. Exercising that discretion, the trial court concluded that plaintiffs' counsel had not displayed adequate diligence to justify Rule 60(c)(6) relief. The court commented in its minute entry on the plaintiffs' failure to serve the defendants for more than nine months after commencement, though "their whereabouts had been known from the beginning of this case." The court also took note of the plaintiffs' relatively minor discovery initiatives and concluded "that plaintiff was not actively pursuing this case and had not from the beginning." We are unable to conclude that the trial court abused its discretion in this finding.

## III. *A.R.S. § 12–504*

We turn to the question of relief under A.R.S. § 12–504. Section 12–504(A) provides:

A. If an action is commenced within the time limited for the action, and the action is terminated in any manner other than by abatement, voluntary dismissal, dismissal for lack of prosecution or a final judgment on the merits, the plaintiff, or a successor or personal representative, may commence a new action for the same cause after the expiration of the time so limited and within six months after such termination. If an action timely commenced is terminated by abatement, voluntary dismissal by order of the court or dismissal for lack of prosecution, the court in its discretion may provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired. Such period shall not exceed six months from the date of termination.

### A. Assertion of a § 12–504 Claim by 60(c)(6) Motion

Preliminarily, we consider the defendants' claim that plaintiffs did not proceed in the procedurally correct fashion to assert or preserve a claim for § 12–504 relief. According to defendants, if the plaintiffs wished to seek § 12–504 relief within the *present* action, they had to do so either in the form of an anticipatory motion before dismissal or in the form of a new trial motion after dismissal pursuant to Rule 59, 16 A.R.S. Rules of Civil Procedure. A final option, according to defendants, was to eschew relief within the present action, file a *second* suit within six months of dismissal of this one, and hope to persuade the second judge to apply § 12–504 to override the assertion of a statute of limitations defense. Impermissi-

ble, however, according to defendants, was to seek refiling in the present case as a form of 60(c)(6) relief.

We disagree. We will not consider in this case whether defendants' final option is a proper option at all—that is, whether the availability of § 12–504 refiling may be determined in the second suit or must be determined in the first suit undergoing dismissal. That question is not presented in this case.

Coming, however, to the issue presented, it is clearly within the contemplation of the statute that the dismissing court may provide a period for commencement of a new action. One opportunity to ask the court to do so, as the defendants point out, is in an anticipatory motion before entry of dismissal. Such a motion might be presented by counsel moving for extension on the inactive calendar; anticipating the possibility of denial, such counsel might include an alternative motion for leave to refile under § 12–504. Where, as here, no such anticipatory motion has been made, a retrospective opportunity follows. One form of retrospective relief, of course, is the *retraction* of the order of dismissal and the reinstatement of the case. Such a motion does not invoke § 12–504. A second form of relief, however, is the *modification* of the order of dismissal to provide a refiling opportunity; such a motion does invoke § 12–504. Both retrospective forms of relief may logically and appropriately be joined as alternatives in a single motion for relief from judgment. And such a motion may logically and appropriately be filed pursuant to Rule 60(c). We conclude that the plaintiffs' invocation of § 12–504 was procedurally proper.

**B. Should Relief Under § 12–504 Have Been Granted?**

 We turn to the substantive question whether the trial court abused its discretion in denying § 12–504 relief. Judge Riddel explained that, in her view, the savings statute and Rule 60(c)(6) were

> both in the same ball of wax. Why would I dismiss it and uphold the dismissal and give you an additional six months? I *don't see that when we are down to 60(c)(6), the decision is any different, under 60(c)(6) or the decision to extend the time.* [They both require] other reasons justifying relief, to-wit: Good cause.

(Emphasis added.)

The court erred, in our opinion, in approaching the question of permitting refiling under § 12–504 as no different from the question of permitting reinstatement under Rule 60(c)(6). If the determinative criteria were identical, it would have served no purpose to include dismissals for lack of prosecution as express candidates for "saving" under § 12–504. Rule 60(c)(6) had long been part of Arizona law when § 12–504 was enacted. If a case were dismissed beyond the ordinary period of limitations, but could qualify for 60(c)(6) reinstatement, it could thereby avoid the statute of limitations bar and would need no "savings statute" to save it.

We do not believe that the legislature indulged in superfluity in the passage of A.R.S. § 12–504. *See, e.g., Garrett v. Tubac–Amado Sch. Dist. No. 5,* 9 Ariz.App. 331, 333, 451 P.2d 909, 911 (1969) ("It is a basic rule of statutory construction to assume that new legislation is not redundant and trivial"). The legislature must have intended by A.R.S. § 12–504 to save cases —dismissals for lack of prosecution among them—that existing rules such as 60(c)(6) would otherwise fail to save.

A.R.S. § 12–504 was the legislature's response to our supreme court's call for a savings statute in *Hosogai v. Kadota,* 145 Ariz. 227, 700 P.2d 1327 (1985). *Hosogai* was a wrongful death action arising from an automobile collision. The plaintiff had initially filed a timely cause of action and had processed it to a jury verdict in her favor, but the judgment was overturned on grounds of defective service and failure to obtain personal jurisdiction over defendant, a resident of Japan. Though plaintiff promptly filed a second suit, it was dismissed because, during the pendency of the first proceeding, the statute of limitations had run. The supreme court reversed the dismissal, finding as a matter of common

law that the statute of limitations had been equitably tolled. The court announced three criteria for equitable tolling, all of which it found satisfied in that case:

(1) timely notice to the defendant in filing the first claim;

(2) lack of prejudice to the defendant in gathering evidence to defend against the second claim;

(3) reasonable and good faith conduct by the plaintiff in prosecuting the first action and diligence in filing the second action.

145 Ariz. at 233, 700 P.2d at 1333. The court noted, however, that "a narrow equitable exception to the statute of limitations is far from the equivalent of a savings statute," and it concluded:

As overseers of the judicial system in this state, we call upon the legislature to pass a general savings statute in civil actions.

145 Ariz. at 234, 700 P.2d at 1334. The legislature promptly answered with A.R.S. § 12–504. The statute was introduced in direct response to the supreme court's *Hosogai* request.

The statute applies to cases terminated beyond the expiration of the applicable statute of limitations where the termination does not constitute a final judgment on the merits. With three exceptions, the plaintiff is automatically granted a six month period for commencing a new suit. Where, however, termination is accomplished by abatement, voluntary dismissal by order of the court, or dismissal for lack of prosecution, the savings period is not automatic; rather, in such cases, "the court in its discretion may provide a period for commencement of a new action for the same cause," and the period "shall not exceed six months from the date of termination." A.R.S. § 12–504(A).

The legislative record does not disclose why the three excepted categories were reserved for discretionary rather than automatic savings. Yet the logic of the statute is discernible upon examination.

Cases of *voluntary dismissal by court order* are governed by Rule 41(a)(2), 16 A.R.S. Rules of Civil Procedure. Thereunder, the court's leave is a prerequisite to the plaintiff's voluntary dismissal if a defendant has already answered or moved for summary judgment. Rule 41(a)(2), like its federal counterpart, empowers the court to balance the equities between plaintiff and defendant in determining whether and upon what terms dismissal should be granted. J. Moore, J. Lucas & J. Wicker, 5 Moore's Federal Practice, §§ 41.05, 41.06 (2nd ed. 1987); *State ex. rel. Corbin v. Portland Cement Ass'n*, 142 Ariz. 421, 424–25, 690 P.2d 140, 143–44 (App.1984). The discretion extended to the dismissing court includes discretion to set terms and conditions for any refiling against defendant. *Id.*

A.R.S. § 12–504 complements Rule 41(a)(2). It empowers the court, in authorizing voluntary dismissal, to permit refiling despite the passage of the normal period of limitations. Yet, by excluding such dismissals from those entitled to an automatic six month period for refiling, the statute preserves the court's power to adjust the equities between plaintiff and defendant by tailoring appropriate conditions for refiling—for example, by requiring the plaintiff to pay certain expenses of the defendant, 5 Moore's, *supra*, § 41.06 at 74–81, or by requiring that filing occur within a lesser period than six months.

Cases of abatement and dismissal for lack of prosecution, like cases of voluntary dismissal under Rule 41(a)(2), require judicial balancing on a case-by-case basis for the equitable application of a savings statute. The designation of such cases for discretionary, rather than automatic, relief under A.R.S. § 12–504 demonstrates a legislative sensitivity to that need.

In every case of abatement or dismissal for lack of prosecution where the statute of limitations has expired, the plaintiff must forfeit trial on the merits. Given our systemic preference for adjudication on the merits, this factor will usually weigh in favor of a savings opportunity. In some cases, however, the negative aspects of plaintiff's forfeiture will be more than counterbalanced by costs to defendant through delay. Although an automatic savings rule for cases of abatement and

dismissal for lack of prosecution would have precluded the court's consideration of demonstrable prejudice to defendants, the discretionary treatment of such cases under A.R.S. § 12-504 permits an equitable balancing by the court.

■ Has evidence faded? Have witnesses been lost? Has factual reconstruction grown more costly or less likely as a consequence of plaintiff's delay? Such factors—best known to and, therefore, shown by a defendant—may tip the balance against the grant of § 12-504 relief despite the burden of denial on a plaintiff. Can it be shown that plaintiff's delay was tactical to gain some advantage that would not have arisen had the lawsuit been processed within the initially allotted time? Has the plaintiff acted in bad faith? These factors might likewise support the denial of refiling under § 12-504.[5]

We emphasize that diligence is no longer the hallmark when the issue turns from 60(c)(6) to § 12-504. *Cf. Gorman,* 152 Ariz. at 183, 731 P.2d at 78. Rather, *the focus shifts from diligence to good faith and comparison of prejudice* when a party already denied 60(c)(6) reinstatement seeks permission for refiling under § 12-504.

Another panel of this court has very recently reached the opposite result in *Flynn v. Cornoyer-Hedrick Architects and Planners, Inc., et al.,* 160 Ariz. 187, 772 P.2d 10 (App.1988). The court there concluded that the plaintiff's lack of diligence precluded not only 60(c)(6) relief but also § 12-504 relief. It stated:

A plaintiff who has had full opportunity to proceed to trial on the merits should not be afforded a second chance simply because he failed to take advantage of the opportunity presented. There is simply no valid justification to provide additional opportunities where a plaintiff has failed to diligently prosecute his case.

*Id.,* at 192, 772 P.2d 15.

We are reluctant to divide this court on an issue where the trial courts need definitive guidance. Yet we believe that our colleagues in *Flynn* have succumbed to the very error of the trial court in this case. By conditioning savings statute relief upon a showing of diligent prosecution, they have blurred the issue of refiling under § 12-504 with the issue of reinstatement under Rule 60(c)(6). The two are separate and distinct. As we have previously pointed out, a plaintiff able to respond to Rule V dismissal by showing reasonable diligence would qualify for reinstatement under 60(c)(6) and under *Gorman;* he thus would have no reason to invoke § 12-504. Correlatively, under *Flynn* a plaintiff who had failed to show sufficient diligence to achieve reinstatement under Rule 60(c)(6) would likewise fail to qualify for refiling under the savings statute. The impact of *Flynn* would thus be to excise dismissals for lack of prosecution from the ambit of § 12-504. In our view this contravenes both the explicit language and the remedial purpose of that act. For these reasons, we decline to follow *Flynn.*

■ We return to the case before us, a case of dismissal for lack of prosecution. We have previously discussed the trial court's error in approaching the question of permitting refiling under § 12-504 as identical to the question of permitting reinstatement under Rule 60(c)(6). We come now to the second aspect of the trial court's error. The purpose of extending the trial court's discretion over refiling under § 12-504, as we have interpreted that statute, is to permit a comparison of the prejudice to the plaintiffs if refiling is denied with the prejudice to the defendants if refiling is granted. In the present case, the defendants have neither demonstrated nor argued that prejudice would result if plaintiffs were granted § 12-504 relief. No defendant claimed or attempted to show that the plaintiffs' delay had somehow impeded the defendants' ability to investigate

---

5. Whenever § 12-504 refiling is permitted, defendants, of course, are divested of an immediate opportunity to avoid trial on the merits. This, however, is not the type of prejudice that we consider as weighing in the balance of harm. The statute's concern lies rather with prejudice as a consequence of delay.

the plaintiffs' claims or marshall evidence for a defense. None attempted a showing of prejudice of any kind. The only harm before the court was the harm that would be suffered by plaintiffs if the opportunity for refiling were denied. Under these circumstances, and in the absence of any showing that the plaintiffs acted in bad faith or for the purpose of harassment, we hold that the trial court abused its discretion in denying the plaintiffs § 12–504 relief.

The defendants argue that the savings statute, so interpreted, extracts the teeth from Uniform Rule V and deprives the superior court of an effective means to enforce its program of civil delay reduction. We do not believe this fear to be well-founded. Lawyers who fail to comply with Uniform Rule V(e) will continue to do so at their peril, *Gorman*, 152 Ariz. at 183, 731 P.2d at 78, and should not be sanguine that the savings statute will ultimately relieve their risk. First, in the passage of time, factors beyond their control may tip the balance of prejudice toward defendant and preclude § 12–504 relief. Second, even where § 12–504 relief is granted, such counsel must face the awkward task of confronting their own clients and explaining why, many months after initial filing, they must start all over again. Third, counsel who through lack of diligence have unreasonably expanded or delayed the proceeding may find themselves *personally* liable for such portion of defendants' attorney's fees and costs as can be charged to their delay. A.R.S. § 12–349(A)(3). For all of these reasons, we do not believe that the availability of § 12–504 refiling to plaintiffs in cases such as this will diminish the efficacy of the delay reduction effort of the superior court. To the contrary, pressures remain for the expeditious disposition of litigation; procedures pertain for transfer of costs associated with delay; yet the court, through application of the savings statute, may relieve the plaintiffs, *where comparison of prejudice permits it,* of the most drastic consequence of dismissal—the inability to reach the merits of their claims. This, we believe, is the purpose of the supreme court's call for a savings statute

in *Hosogai*, and this, we believe, is what the legislature delivered with the passage of § 12–504.

### Conclusion

The trial court's denial of § 12–504 relief is reversed. The trial court is directed upon remand to determine the appropriate period within which the plaintiffs may institute a new action for the same cause against defendants.

SHELLEY, P.J., concurs.

GREER, Judge, dissenting:

I must respectfully dissent from that part of the majority opinion pertaining to A.R.S. § 12–504(A), for the reasons set forth in *Flynn v. Cornoyer–Hedrick, et al.,* 160 Ariz. 187, 772 P.2d 10 (1988).

The purpose underlying the enactment of A.R.S. § 12–504(A), as enunciated by our state supreme court in *Hosogai v. Kadota,* 145 Ariz. 227, 700 P.2d 1327 (1985), was to relieve a plaintiff from the effect of a dismissal resulting from procedural impediments, softening the impact of technical rules which might otherwise prevent good faith litigants from having their day in court. It would not be proper to allow plaintiffs relief from their own inaction resulting in dismissal for failure or neglect to timely prosecute a claim. The statute was intended *not* to serve as a refuge for the negligent, but as an aid to the diligent.

Moreover, the majority opinion, in effect, shifts the burden of demonstrating prejudice to the defendant. Since prejudice would always exist as to a plaintiff unable to refile, the consequence of the majority opinion is to grant plaintiffs a presumptive right to refile. This result is inconsistent with the language of the statute, which clearly provides for discretion in situations where plaintiffs have not diligently prosecuted their cases. It is essential that a trial court determine whether, through the lapse of time, the cause of action has been rendered difficult or impossible to defend.

In addition, I would remand for a further hearing, providing defendants the opportunity to make a countervailing case pursu-

ant to the standard established by the majority decision.